FREDERIC D. CONRAD, PLAINTIFF IN ERROR, *v.* DAVID GRIFFEY.

Where a witness was examined for the plaintiff, and the defendant offered in evidence declarations which he had made of a contradictory character, and then the plaintiff offered to give in evidence others, affirmatory of the first, these last affirmatory declarations were not admissible, being made at a time posterior to that at which he made the contradictory declarations given in evidence by the defendant.

Where the writ, pleadings, and contract spoke only of Frederic D. Conrad, and the judgment went against Daniel Frederic Conrad, the defendant, it was too late after verdict and judgment to assign the variation as error.

THIS case was brought up, by writ of error, from the Circuit Court of the United States for Louisiana.

There was only one point of evidence involved. · Three exceptions were taken during the progress of the trial by the plaintiff below, but, as the verdict was in his favor, they were not argued here.

· On the 26th of March, Conrad, being a Louisiana planter, made a contract with Griffey of Cincinnati, by which Griffey engaged to construct and set up a steam-engine and sugar-mill boilers, &c., upon Conrad's plantation, for $ 6,650, payable at different times. Griffey stipulated to have the privilege of appointing the engineer to run the engine during the rolling of the first crop.

On the 23d of December, 1846, Griffey brought his action, by way of petition, against Conrad, claiming a balance of $ 3,781.58.

On the 22d of January, 1847, Conrad filed his answer, admitting the work, but denying that it was properly performed according to contract, and alleging that he had sustained a loss of $ 10,000, which he claimed in reconvention.

On the first trial, February 23, 1848, the jury found a verdict for plaintiff for $ 3,000, without interest.

The court granted a new trial.

On the 20th of February, 1849, the cause came on again for trial, when the jury found a verdict for plaintiff for $ 3,781.58, with interest.

Amongst other testimony taken on the part of the plaintiff, under a commission, was that of Leonard M. Nutz, the engineer sent by Griffey to erect and work the machine. His answers to various interrogatories may be condensed as follows : —

The quality and strength of the engine were well proportioned and strong. The quality of the machinery was good. The general style and character of the whole workmanship, mill and engine, was good. It compared with others very well.

By housings are meant the frame which holds or supports the rollers.

I did notice particularly the housings of Mr. Conrad's mill and engine. They were sufficiently strong; they were well fitted and suited for the purposes they were intended to be used for.

· I do not know of any defects.

In answer to 14th interrogatory says, I was at the mill and engine, after it was started, in the capacity and employment of engineer. I was there on the 30th day of October, 1845, acting in that capacity.

In answer to 15th interrogatory says, On the 30th of October we put in a spring beam, underneath the housing,

and took out the ones that were there, on account of their being made of green timber and had sprung; there was nothing broke at that time; some time in November one of the housings broke, which was caused by the. carelessness of one of the negroes letting a piece of iron pass in the rollers, in the carrier, which was sufficient to break any engine; I was asleep along side of the engine, and was awakened by the surge, and took out the piece of iron; the housing did not part, it only cracked, and the mill was not stopped at all on account thereof; but when the tie-bolt was put in, we stopped about 2½ hours.

In answer to 17th interrogatory says, The head engineer had an assistant furnished by the planter; the head engineer watches 18 hours, the assistant 6 hours, and they two attend to the engine.

In answer to 18th interrogatory says, I had an assistant, which was one of Mr. Conrad's slaves, named Tilman, furnished by Mr. Conrad.

In answer to 19th interrogatory says, The accident occurred during the watch of my assistant.

In answer to 20th interrogatory says, There was no time lost, except the two hours and a half which I was putting in the tie-bolt.

In answer to 21st interrogatory says, I made two new brace bolts for the housings, and continued the crop without any further detention.

In answer to 22d interrogatory says, I was present during the whole time the engine was employed taking off the crop that year, and no other stoppage of the engine and mill occurred.

This deposition was taken on the 1st of April, 1847.

The defendant then offered the depositions of Sosthene Allain, W. Hunstock, and William Neff. It may here be mentioned that the plaintiff objected to reading what related to Nutz's statements, on the ground that the defendant, by omitting to cross-examine him, and to inquire into such conversations, had not laid the foundation for the admission of such statements. But the court decided to admit them, and allowed them to be read. To this decision the plaintiff's counsel excepted. But, as before remarked, this exception was not argued.

The depositions were as follows.

Mr. Allain : —

Interrogatory 22d. Did you see and converse with the white engineer (who ran Mr. Conrad's engine), just after the last accident to the mill; if yes, do you recollect his name; what rea-

Conrad *v.* Griffey.

son did he assign for the housing of the mill being fractured; did you hear any thing about a piece of iron or wood running into the rollers; if yea, what and from whom?

To 22d interrogatory witness answers: That he did converse with the engineer, whose name he believes was Nutz, immediately after the breaking of the housing; and that the reason assigned by said engineer, Nutz, for the breaking of the housing was, that the housings were entirely too weak; that witness did not hear any thing said by any one about a piece of iron or wood having run into the rollers.

Mr. Hunstock: —

3d. Did the plaintiff examine the sugar-mill and engine of defendant at that time, and what did he say touching the accidents to the machinery, and their probable cause?

To the 3d interrogatory the witness answers: That the plaintiff did examine the sugar-mill and engine of defendant at that time, and then he, the plaintiff, said, that Nutz, the engineer, whom he, the plaintiff, had sent to run the engine of defendant, had told him that the breaking of the housings of the mill was owing to the chawing of the keys that keyed up the brace bolts; but he, the plaintiff, had afterwards found out that said Nutz was an incompetent and lazy engineer, and that he was inclined to believe that it was owing to Nutz's neglect the accident happened, and that he, the plaintiff, was so dissatisfied with Nutz, that soon after his return to Cincinnati he had dismissed him from his shop.

10th. Did you see Nutz soon after, and how soon after, the breaking of the housings; did he express any opinion as to the cause, and what did he say on the subject?

To the 10th interrogatory the witness answers: That he saw Nutz soon after the accident occurred, at his, witness's, sugar-house, but cannot say precisely how long after, but it was not longer than one week after the breaking of the housing, that Nutz came to the sugar-house of witness, by consent of defendant, to assist in taking down some part of his, witness's, machinery, which occupied him about one or two hours; during which time he had a conversation with Nutz about the accident which had happened to the housing of defendant's mill; that he asked Nutz to what cause the breaking of said housing was owing; and Nutz answered, he could not tell the cause of its breaking, as there was moderate feed on the cane-carrier at the time the accident happened, and no strain on the mill.

William Neff: —

The 22d interrogatory was the same as that put to Mr. Allen.

To the 22d interrogatory the witness answers: Tha he

heard that Nutz said, that he could not tell the reason why the housing broke; that there was a very light feed of cane on at the time, and no strain on the mill. This was said by Nutz immediately after the fracture was discovered, and he said, at the same time, that nothing had gone through the rollers that could have strained the mill.

Interrogatory 32d: Was there any unusual strain on the mill at the time the housing gave way; if yes, state what it was; did any iron or wood, or any foreign substance, go into the rollers to strain them; if yes, what was it; what did the engineer, Mr. Nutz, say about it at the time?

To 32d interrogatory witness answers: That he has no knowledge that there was any unusual strain on the mill when the housing broke, and that he does not think there was. Witness has no knowledge that any iron or wood, or any other substance than sugar-cane, went into the rollers to strain them, nor does he believe that any foreign substance did get into them to strain them. Witness heard Mr. Nutz express great surprise at the time at the accident, saying that he could not account for it, as there was a light feed of cane at the moment, and nothing had gone into the rollers to strain them. In talking on the subject of the accident, witness heard Mr. Nutz say, that the housings were entirely too weak for the power of the engine, besides the mill.

These depositions having been given in evidence, the plaintiff offered, as rebutting evidence, and to support the credit of Nutz, the two following pieces of testimony.

1st. The following letter from Nutz:—

" *New Albany, April* 3, 1846.

" Mr. D. Griffey:—Dear Sir: My sister handed me a few lines addressed to her, requesting me to send my affidavit respecting F. D. Conrad. I have no knowledge of the information you wish, unless it be the accident of the breaking of one of the housings of his sugar-mill, and all that I can say upon the subject is, that the night when, in my candid opinion, the accident happened, I was awakened by the surging of the engine; it completely stopped under a good head of steam. I then ordered the negro man who was running the engine at the time, to examine well in the cane shute, supposing something harder than cane to have passed in the carrier, and there was found a piece of iron that broke off of one of the cane carts, wedged in front of rolls, too large to pass; in the shape was thus, about 16 inches long, 1½ inches wide, where it came in contact with the other, with the rolls; and from that time until I discovered the break, which was the

next day, I found it difficult to keep that end of rolls tight; I then forged new tie-bolts with keys on the outer ends, to keep them firmly keyed, and by so doing we were enabled to take off the crop without losing but three hours by the break; for whilst I was forging the bolts, the engine was still running.

" Previous to the breaking of the housing, we had another small stoppage, but no accident; the wall was very green, and likely to give way; under the spur-wheel stand bed-plates, which rendered it firm and secure during the season, and will always remain so under any reasonable usage; this stoppage was the 30th of October, 1845.

" If the overseer, Mr. Collins, had let Mr. D. Edwards commence his work when he wanted to, I do candidly think the walls would have been more firm, and the least fear would have been overcome; there was no accident, but the bolts were placed to render the work more secure upon the foundation; and as for the machinery in general, it was a good strong piece of work, hard to be surpassed.

" LEONARD N. NUTZ.

" To DAVID GRIFFEY, *State of Indiana, Floyd County, ss.*

" On the 3d day of April, A. D. 1846, before the subscriber, justice of peace in and for the said county, and authorized by law to administer oaths, personally appeared Leonard N. Nutz, and made oath that the above is a true statement of F. D. Conrad's sugar-mill and engine.

" LEONARD N. NUTZ.

" Given under my hand and seal, this 3d day of April, 1846.
" SAMUEL G. WILSON, J. P."

2d. The testimony of one Edwards, a witness, sworn in open court, to the effect that, in the spring of 1847, the said Nutz had said, in the presence of said Edwards, that the breaking of the housings or frame of the sugar-mill had been occasioned by a piece of iron getting between the rollers.

To the introduction of this rebutting testimony the defendant objected, but the court directed it to be admitted; whereupon the defendant took the following bill of exceptions : —.

" Be it known, that on the trial of this cause before the jury, the plaintiff having offered the deposition of Leonard N. Nutz in evidence, and the defendant having offered the depositions of Sosthene Allain, W. Hunstock, and William Neff, all on file, the said plaintiff offered as rebutting evidence, and to support the credit of L. N. Nutz, —

" 1st. A letter of L. N. Nutz, of date New Albany, the 3d
41 *

of April, 1846, with an affidavit annexed; and 2d. The testimony of one Edwards, a witness, sworn in open court, to the effect that, in the spring of 1847, the said Nutz had said, in the presence of said Edwards, that the breaking of the housings or frame of the sugar-mill put up by plaintiff for defendant, had been occasioned by a piece of iron getting between the rollers. To both of which, to wit, the said letter and affidavit, and the said statement in presence of said Edwards, the counsel for defendant objected, that, at the time of the making of said affidavit and said verbal statements, the said Nutz was not an agent of defendant, or employed by him; that said affidavit was not made under commission, nor with any notice or opportunity on the part of defendant to cross-examine the said witness; that his said verbal statement was not made in the presence of defendant; and, lastly, that the evidence of the defendant above referred to was not an attack upon the credit of said Nutz, but was competent testimony, admissible to prove the facts attested, and did not justify the admission of statements, either verbal or written, at other times and places made by said Nutz in order to support his credit; but all said objections were overruled, and the said letter and affidavit were received, and the testimony of said Edwards, as above stated, was also received and laid before the jury; to all of which the counsel for the defendant tender this their bill of exceptions, and pray that the answers to the interrogatories of L. N. Nutz, W. Hunstock, William Neff, and Sosthene Allain be deemed and taken as a part of this bill of exceptions, and be copied and certified accordingly.

"THEO. H. McCALEB, *U. S. Judge.*"

Upon this exception, the case was argued in this court by *Mr. Fendall*, for the plaintiff in error, and *Mr. Gillet*, for the defendant in error.

The counsel for the plaintiff in error made several points, of which it is only necessary to notice the following.

I. Illegal evidence.

This ground is disclosed in the defendant's bill of exceptions, and in the letter and affidavit which it refers to.

Griffey was bound by his contract to " put up," as well as to construct, the steam-engine and sugar-mill; and, in the contract, he reserved to himself the privilege of appointing the engineer to run the engine, during the rolling of the first crop. Leonard N. Nutz was the " engineer appointed to run the engine for the plaintiff." He was thus a very important witness for the plaintiff. His deposition tends to prove, that the steam-engine, sugar-mill, and apparatus supplied by the plaintiff below

Conrad v. Griffey.

were, in every respect, conformable to the contract between the parties; that the plaintiff had, on his part, fully complied with his contract, and that he was entitled to the price which he claimed under the contract, and for extra work. In short, his deposition tended to prove the plaintiff's whole case. Other witnesses deposed to the weakness and insufficiency of the machinery; and their testimony, on many points, is in direct conflict with that of Nutz.

One of these points was especially important. Soon after the sugar-mill was set up, the housings, or frame on which the rollers rest, which are the foundation on which the mill works, broke; and could not be fully repaired during the entire season. In consequence of this very serious injury, the grinding was greatly delayed, and when it recommenced, the work was done much less perfectly. It became a most material subject of inquiry whether this breaking arose from the weakness of the housings, or from some cause for which the manufacturer was not liable. Nutz, in his deposition, swore that the breaking was caused by a piece of iron passing in the rollers in the carrier. Three other witnesses present, or near, at the time when the break was discovered, swore to the contrary of this. In order to induce the jury to give greater credit to Nutz's testimony than to that of the defendant's witness, the plaintiff offered to show that at other times, and to other persons, Nutz had given the same account of the breaking as that contained in his deposition. The objections set out in defendant's bill of exceptions to the admissibility of Nutz's letter of the 3d of April, 1846, and his statement in the presence of Edwards, are relied on in support of the writ of error. In some cases the credit of a witness may be supported by proof of his statements, but this is not a case within the rule. Whatever uncertainty or fluctuation may be discerned among the older authorities, the doctrine which is now well established limits the abduction of confirmatory statements to cases in which the motive of the witness is assailed or brought under suspicion. In such cases, and in such only, evidence is admitted of his having made similar statements when the imputed motive did not exist. This principle is clearly to be collected from the rule, as enunciated in different forms by the most approved writers. See Sir W. D. Evans, 2 Pothier on Obligations, 289; 1 Greenl. Ev. § 469; 1 Starkie's Ev. 148, 149 (Bost. 1826); 3 Starkie's Ev. 1758; 1 Phil. Ev. 308 (ed. N. Y. 1839); 2 Phil. Ev. 445, 446 (ed. N. Y. 1849, from 9th Lond. ed.); Robb v. Hackley, 23 Wend. 50; 24 Wend. 465; 10 Peters, 438, 439; 1 McLean, 211, 212; 8 Wheat. 332; 24 Wend. 425, 426.

In Parker's case, 3 Doug. 242, the evidence of a confirm-

atory statement was rejected, Buller, J. holding "that it was clearly inadmissible, not being upon oath." This objection being sufficient for that case, it was unnecessary for the court to go any further. But the principle is the same, whether the confirmatory statement be sworn or unsworn. In this case, the statement made in the presence of Edwards was not sworn to; and that may have been the very statement that swayed the jury. "It is well settled that, if improper evidence be given, although it may be cumulative only, the judgment must be reversed; for we cannot say what effect such evidence may have had on the minds of the jury." Osgood v. Manhattan Company, 3 Cowen, 621; cit. Marquand v. Webb, 16 Johns. 89. But whether the confirmatory statement was or was not sworn to, the true questions are, in either alternative, Was the statement made before the imputed or suspected motive existed? (2 Evans's Pothier, 289; 1 Phil. Ev. 308.) Was it made before "the relation" of the witness "to the party or to the cause" existed? (1 Greenl. Ev. § 469.) Was it made "at a time when the witness labored under no interest or influence to misrepresent the fact"? (1 Starkie's Ev. 149; 3 Ibid. 1758.)

Neither Nutz's letter and affidavit, nor his statement in the presence of Edwards, can stand any of these tests. His credit may have been impeached, indirectly, by disproving facts sworn by him; and directly, by proof that his own statements, made when the breaking occurred, were in direct conflict with the account which he gave in his deposition. But his own position on the 3d of April, 1846, when he writ the letter, and in the spring of 1847, when he made the statement in the presence of Edwards, was the same as on the 1st of April, 1847, when he made the deposition. And in regard to his statement in the presence of Edwards, the admission of it in evidence is liable to the further objection, that it was not proved to have been before he gave his deposition. Edwards says that it was made "in the spring of 1847"; but whether before or after the 1st of April in that year he does not say. The "relation to the party and to the cause" which tended to bias the mind of Nutz existed in the fall of 1845, and resulted from his being employed by the plaintiff to set up and work the mill. That bias was at least as strong in April, 1846, the date of the letter, as it was in April, 1847, the date of the deposition; and, consequently, his statements at the former or any intermediate date could not legally be adduced in support of his deposition.

IV. Repugnancy and uncertainty in the judgment.

1. The judgment is against a person not a party to the suit.

2. The judgment is uncertain as to the identity of the defendant.

The suit is brought against " *Frederick* D. Conrad "; in all the pleadings, entries, captions, &c., he is so called, except when he is called " F. D. Conrad "; the contract purports to have been made between the plaintiff and " *Frederick* Daniel Conrad." The judgment is against " *Daniel* Frederick Conrad." The middle name forms no part of the Christian name of a party. Keene v. Meade, 3 Peters, 7 ; Games v. Stiles, 14 Peters, 327. The suit, then, is against *Frederick* Conrad, and the judgment is against *Daniel* Conrad.

*Mr. Gillet*, for the defendant in error, made the following points : —

1. The defendant assailed the veracity of Nutz, by proving that he had given to defendant's witnesses an account of the breaking the housings of the mill which essentially differed from his testimony in the cause, taken before a commissioner. 1 Greenl. Ev. § 462 ; 1 Phil. Ev. 293 ; Roscoe's Criminal Ev. 181, 182 ; 3 Starkie's Ev. 1753 ; 1 Part of Cowen & Hill's notes on Phil. Ev. 772, and cases there cited.

2. The plaintiff had a right to fortify Nutz's testimony, after it was assailed, by proving that he had formerly given the same account of the transaction. English Authorities : — Gilbert's Ev. 135 ; Finney's case, McNally's Ev. 378 ; McCann's case, Ibid. 381 ; Leary's case, Ibid. 379 ; Buller's Nisi Prius, 294 ; Hawkins's Pleas of the Crown, b. 2, c. 46, s. 48 ; Roscoe's Crim. Ev. 1757, 1758 ; Sir J. Friend's case, 4 State Trials, 37 ; S. C., 13 Howell's State Trials, 32 ; Harrison's case, 2 Howell's State Trials, 861 ; Lutterel v. Regnell, 1 Mod. 282. American Authorities : —Quay v. Eagle Fire Ins. Co., by Van Ness, J., 2 City Hall Recorder, 1, 21 ; Connecticut v. De Wolf, 8 Conn. 93 ; The People v. Vane, 12 Wend. 78, 79 ; Johnson v. Patterson, 2 Hawks, 183 ; State v. Twitty, 2 Hawks, 248, 441, 448 ; Coffin v. Anderson, 4 Blackf. 395 ; Beauchamp v. The State, 6 Blackf. 300 ; The Commonwealth v. Bosworth, 22 Pick. 397 ; Cook v. Curtis, 6 Har. & Johns. 86 – 93 ; Packer v. Gonsalus, 1 Serg. & Rawle, 536 ; Henderson v. Jones, 10 Serg. & Rawle, 322 ; Wright v. Deklyne, 1 Pet. 203 ; Claiborn v. Parish, 2 Wash. Va. 148.

3. The defendant below had no right to give in evidence what Nutz had told other persons concerning the sugar-mill, because he (the defendant) had not inquired of him (Nutz) whether he had had any such conversations with such persons, thereby laying a foundation for such evidence. Roscoe, Cr. Ev. 182, 184 ; Evertson v. Carpenter, 17 Wend. 419 ; Tucker v. Welch, 17 Mass. 160 ; Ware v. Ware, 8 Greenleaf, 42 ; The Queen's Case, 2 Brod. & Bing. 301 ; 1 Greenleaf's Ev. § 462 ; 1 Phil. Ev. 593, 1 Cowen & Hill's Notes, 773.

4. If evidence was given by the plaintiff to repel such illegal evidence on the part of the defendant, it merely counteracted the error committed by him, and is no ground of error.

Mr. Justice WOODBURY delivered the opinion of the court.

In this case, there had been four bills of exception filed in the court below, but only one of them by Conrad, the plaintiff in error. We shall, therefore, proceed to dispose of that alone.

It objected to the receipt in evidence of declarations, made by a witness for the original plaintiff, under the following circumstances.

Griffey brought a suit against Conrad for building a mill for him to grind sugar-cane; and, among other defences set up by the latter, was that of weakness and insufficiency in the work and materials furnished. To repel this defence Griffey put in the deposition of Nutz, who was an engineer and aided and superintended the erection of the mill, and who testified to the goodness of both the work and materials.

With a view to contradict and impeach him in what he thus swore, Conrad proved that this witness, soon after the completion of the mill, had given a different account, and especially of the cause of the breaking of some of the machinery; considering it to have happened from the badness of the materials.

Griffey then offered to prove that the witness had since given the same statement, as to the goodness of the work and materials, which was now in his deposition. But Conrad objected to the admissibility of such evidence; and the court below overruled his exception and allowed the evidence to go to the jury.

After due consideration, our opinion is, that this ruling was erroneous.

The practice on this subject seems to differ much in different States, and has occasionally changed in the same State. It is sometimes modified, also, as applied to different classes of cases and witnesses.

Thus, in some places, as in New York, such evidence is, as a general rule, now treated as inadmissible. Robertson v. Caw, 3 Barbour, 410; Robb v. Hackley, 23 Wend. 50; Dudley v. Bolles, 24 Wend. 465. So in Vermont. Gibbs v. Linsley, 13 Verm. 208. Though at one time in New York it was allowed, and particularly in certain criminal cases. The People v. Vane, 12 Wend. 78; Jackson v. Etz, 5 Cowen, 320.

But in some other States this kind of evidence has been deemed competent. As in Massachusetts, in a criminal case, where an accomplice was a witness. Commonwealth v. Bos-

worth, 22 Pick. 397. And in Maryland, if the statements were prior in point of time. Cook v. Curtis, 6 Har. & Johns. 93.

In Pennsylvania, also, such statements have been admitted, without reference to their priority. As in Parker v. Gonsalus, 1 Serg. & Rawle, 536; Henderson v. Jones, 10 Ib. 322. So in Indiana. Coffin v. Anderson, 4 Blackf. 398, 399. And in some other States, which need not be repeated, a similar practice appears to prevail.

But in other places, as in England, such evidence, though at one time considered competent, and especially in criminal cases, (Gilb. Ev. 135; McNally's Ev. 378, 381; Bull. N. P. 294; Lutterrell v. Reynell, 1 Mod. 282), is now even there excluded. See Parker's case, 3 Doug. 242; 10 Peters, 440; 1 Phil. Ev. 2 and 3, and 230, note; 1 Starkie's Ev. 187 and note; 23 Wend. 55; 2 Phil. Ev. 445; Brazier's Case, 1 East, P. C. 444; 2 Starkie, N. P. 242.

While the rule was otherwise in England, some of the State decisions already cited were expressly grounded on the rule there (see 10 Serg. & Rawle, 332), and others on cases adopting that rule (4 Blackf. 398).

But since the rule became changed in England, or from being doubtful became well established against the introduction of such testimony, the practice in some States, as in New York and Vermont, has been settled so as to correspond; and in this court, also, it has taken the same direction.

In this court it has been held that such evidence is not admissible, if the statements were made subsequent to the contradictions proved on the other side. Ellicott v. Pearl, 10 Peters, 412, 438.

That was a case from Kentucky. Yet the decision does not appear to have been made to rest on the peculiar laws or practice of that State; but on general principles, and the course pursued of late years in England.

In our judicial system, perhaps the decision should not rest on any local rule, though a different principle seems involved in McNiel v. Holbrook, 12 Peters, 85, where the rule of evidence was changed by a State statute. Clark v. Sohier, 1 Woodb. & Min. 368.

But if it should so rest, we are not aware that in Louisiana, where this case was tried, the practice differs from what appears to be required by sound general principles, independent of any local peculiarities.

So far as regards principle, one proper test of the admissibility of such statements is, that they must be made at least under circumstances when no moral influence existed to color or misrepresent them. 1 Greenl. Ev. § 469; 2 Pothier on Oblig. 289; 1 Stark. Ev. 148: 1 Phil. Ev. 308.

But when they are made subsequent to other statements of a different character, as here, it is possible, if not probable, that the inducement to make them is for the very purpose of counteracting those first uttered. 10 Peters, 440.

This impairs their force and credibility, when, if made before the others, they might tend to sustain the subsequent evidence corresponding with them. 23 Wend. 52; 2 Phil. Ev. 446; 1 Greenl. Ev. § 469.

When made in either way, they are admissible only to sustain the credit of the witness impugned, and not as *per se* proof of the facts stated, and hence if made under oath, as here, but not in legal form as a deposition between these parties, they are none the more admissible, except, if prior in date, they might help to sustain the witness' credit. 10 Peters, 412; King *v.* Eriswell, 3 D. & E. 721.

In this case, then, not having been made prior in time, they do not appear on principle or precedent to be competent.

Another question has been presented, arising on the record, which is not included in any of the exceptions.

It is that the judgment runs against "Daniel Frederick Conrad," when the writ, pleadings, and contract speak only of "Frederick D. Conrad." But the judgment is for the plaintiff against "Daniel Frederick Conrad, *the defendant.*" And the name prefixed as defendant in the judgment may well be rejected as surplusage, after verdict and judgment, when the true name had been well described in the writ and pleadings.

The statute of jeofails clearly cures any such defect, where, as here, it can well be understood who was meant by "the defendant." 1 Stat. at Large, 91; 1 Bac. Abr., *Amendment,* B; 1 Peters, 23.

Let the judgment below, however, be on the first ground reversed.

### *Order.*

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Louisiana, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, reversed, with costs, and that this cause be, and the same is hereby, remanded to the said Circuit Court, with directions to award a *venire facias de novo.*