## QUIGLEY v. GULF, C. & S. F. RY. CO.

(Court of Civil Appeals of Texas. Dallas. Nov. 18, 1911. Rehearing Denied Jan. 13, 1912.)

1. EVIDENCE (§§ 271, 318*) — SELF-SERVING DECLARATIONS—HEARSAY—ADMISSIBILITY.

A written declaration by a railroad conductor to the claim department of his employer that he did not push a person from a train, as alleged in an action later brought for injuries received, is inadmissible therein as self-serving and hearsay, where no attempt was made to impeach his testimony.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1068–1104, 1193–1200; Dec. Dig. §§ 271, 318.*]

2. EVIDENCE (§ 272*) — ADMISSIONS — STATEMENTS IN WRITING—UNEXECUTED CHARACTER.

While, in an action for personal injuries, admissions made by the plaintiff in the presence of others are admissible as declarations against interest, a written statement neither written, signed, nor sworn to by such plaintiff, and the correctness of which he denies, is not admissible.

[Ed. Note.—For other cases, see Evidence, Dec. Dig. § 272.*]

3. TRIAL (§ 251*)—INSTRUCTIONS—IMMATERIAL ISSUE.

Where, in an action for injuries alleged to have been received from being pushed off a railroad train by a conductor, the question of proximate cause was not an issue, an instruction requiring the jury to find that the act of the conductor was the proximate cause of the injury was improper.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 587–595; Dec. Dig. § 251.*]

4. CARRIERS (§ 364*)—EJECTION OF PERSON NOT A PASSENGER—LIABILITY FOR INJURY.

Though a person is not a passenger, the act of a conductor in pushing him from the train while it was moving at a dangerous rate of speed was negligence which would support a recovery for injuries received.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1447–1449, 1453; Dec. Dig. § 364.*]

5. CARRIERS (§ 384*)—EJECTION OF PERSON NOT A PASSENGER—LIABILITY FOR INJURY—INSTRUCTIONS.

In an action for injuries received by a person who went upon a train to do business with a passenger, and alleged to have been received by reason of his being pushed from the rapidly moving train by the conductor, an instruction

that if the jury believed that the conductor in charge of the train in question "did not meet the plaintiff on the platform or steps, * * * or, if he did meet the plaintiff, did not shove, or push, or use any force to throw plaintiff off," they should find for the defendant, required the jury to find the immaterial issue as to whether the plaintiff met the conductor on the platform or steps in the affirmative before they could find in favor of plaintiff, and was improper.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 384.*]

6. TRIAL (§ 312*) — MISCONDUCT OF JUDGE — COMMUNICATION WITH JURORS.

Where the trial judge, upon learning by conversation with a juror after the jury had retired that they were having trouble in settling the cause, called the jury back into court without any request on their part for instruction, in the absence of the plaintiff or his counsel, and gave them an oral instruction as to their duty or obligation to reach a verdict, it was improper and erroneous as a communication with the jury in a manner other than that prescribed by law.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 744, 745; Dec. Dig. § 312.*]

Appeal from District Court, Johnson County; O. L. Lockett, Judge.

Action by Calvin Quigley against the Gulf, Colorado & Santa Fé Railway Company. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

Odell & Johnson and S. C. Padelford, for appellant. Terry, Cavin & Mills, Brown & Lockett, and Lee & Lomax, for appellee.

BOOKHOUT, J. The plaintiff on the 15th day of April, 1910, instituted this suit in the district court of Johnson county, Tex., against the defendant the Gulf, Colorado & Santa Fé Railway Company for damages for personal injuries inflicted on the plaintiff by the defendant on the 20th day of March, 1909, in the city of Cleburne, Johnson county, Tex. The plaintiff, among other things, alleged: That his brother was a passenger on the defendant's south-bound passenger train on said day. That when the train stopped at the defendant's passenger depot in Cleburne, Tex., the plaintiff boarded said train for the purpose of talking to his brother upon a matter of business. That no notice was given that the said train would start, no whistle blown, or bell rung. That while he was talking to his brother the train started moving southward. That plaintiff believed that the train had not started on its run south, but was merely being switched. That, the train continuing to move, the plaintiff saw and believed that the said train was in fact moving out from the depot on its run south over the defendant's line of railroad. That, as soon as the plaintiff perceived that fact, he immediately went to the platform and to the steps of the said coach upon which he was at that time for the purpose of getting off of said train. That about the time he reached the platform he met the conductor of the train, who asked him if he

had a ticket. That the plaintiff informed him that he did not have a ticket, and also stated to the conductor that he desired to alight from the train. At first plaintiff believed that the movement of the train was merely for the purpose of switching in the yards in Cleburne, and he so told the conductor. That thereupon said conductor told him to get off of said train, but plaintiff told the conductor that the train was going too fast, and at too great a rate of speed. That the plaintiff had gotten down on the steps for the purpose of getting off, but discovered that the train was going at too great a rate of speed for him to get off with safety, and that the conductor was standing above and behind the plaintiff on the steps of the coach, and that, when the plaintiff refused and declined to step from said train for fear of being injured, the conductor of said train ordered the plaintiff to get off, which the plaintiff refused, and the conductor then placed his hand on plaintiff's back or shoulders and gave the plaintiff a quick and hard shove and pushed and threw the plaintiff from the said step and from said train, thereby causing the plaintiff to fall and be thrown with great force off of said train, and upon the ground, striking the ground violently and with great force, and that his shoulders, side, and hips came in contact with the ground, and his head also struck the ground with great force and violence, and that the scalp of his head was cut to the bone, and two of his ribs broken, and his body was injured permanently, to plaintiff's damage in the sum of $10,000. In other words, the plaintiff sues the defendant, alleging as a ground that the plaintiff had merely gotten upon the train for the purpose of seeing his brother, who was a passenger thereon, and communicating with him about a matter of business; that while the plaintiff was upon the train the same started to move off slowly, but no signal or notice was given that the train was pulling out, or going south, the plaintiff believing that the same was being moved merely for the purpose of being switched; that after the train had gotten under headway, and plaintiff believing that the same was pulling out, he went out upon the platform and met the conductor upon the platform, and got down upon the steps to get off, but discovered that the train was going at too great and dangerous a rate of speed, and he would not get off for fear of being injured; that the conductor ordered him to get off, and the plaintiff told the conductor that he could not get off because the train was going at too great a rate of speed, that it would injure him, and the conductor then ordered and violently pushed him off of the train; and that by reason of the speed of said train and the fall of the plaintiff his body, head, and sides struck the ground with great force, breaking two of his ribs, and

cutting a great gash in his head and greatly injuring him. The defendant pleaded not guilty, and that the plaintiff was guilty of contributory negligence in getting off of the train while it was going too fast, and that the plaintiff's injuries were the result of his own contributory negligence. The case was tried before a jury, who, after hearing the evidence and having received the charge of the court, returned a verdict in favor of the defendant. The plaintiff duly perfected an appeal.

[1] The first assignment reads as follows: "The trial court erred in admitting in evidence, over the objections of the plaintiff, a written statement made by the defendant's witness J. Shaffner on the 26th day of April, 1909; the same being an ex parte statement made and signed by the said witness for the defendant long before the institution of this suit to the effect that he knew nothing about the plaintiff and his injuries." The objections were that said statement was hearsay and self-serving. The assignment is presented as a proposition, and the additional proposition is presented that a written statement made by a witness for a party cannot be introduced by the party offering the witness for the purpose of sustaining or supporting the testimony of the witness. The witness Shaffner, while on the stand, among other things, testified that he never met the plaintiff on the platform on a train on which he was conductor going south on March 20, 1909; that he never told the plaintiff to get off of the train, never ordered him off, and never saw the plaintiff on the train that night, or on that occasion, and never pushed the plaintiff off of the train, and plaintiff never got off his train; that he never heard of this matter; that he never had any conversation with any negro on the train on that day; and that the first time that he ever heard of this claimed accident was about a month or six weeks after it was supposed to have happened, which was on the 26th day of April, in Galveston. On cross-examination, he admitted that he had told Mr. Padelford and Mr. Johnson, plaintiff's attorneys, soon after this suit had been instituted, that he had never heard of this thing before, and he stated, "I think that I told them, too, that possibly in March, 1909, I might have been on train No. 17." These propositions must be sustained. There had been no impeaching evidence offered by plaintiff to the testimony of the witness Shaffner as given by him in the case. The written statement was made to the defendant's claim department in Galveston, and, at the time when the witness was interested in showing his employer, the defendant, that plaintiff was not injured by his fault. Railway Co. v. Stone, 25 S. W. 808; Moody v. Gardner, 42 Tex. 414; Insurance Co. v. Eastman, 95 Tex. 34, 64 S. W. 863; Conrad v. Griffey, 11 How. 480, 13 L. Ed. 779.

[2] Again, it is contended that the trial court erred in admitting in evidence, over the objections of the plaintiff, an unsigned statement, which was written out by the claim agent, John Douglass, but not signed by the plaintiff. Some time after the injuries to the plaintiff complained of in his petition, the defendant's claim agent, Douglass, and a notary public went out to the plaintiff's home for the purpose of getting a statement from him. In this statement it is set out that plaintiff swung off of the car, and fell, and does not state that the conductor pushed him off. He merely states that the conductor told him to get hold of the side piece of the steps and told him to go the way the train was going. "He says, 'You go on off,' and I just swung off in the direction the train was going." The plaintiff on the trial of the case swore that the conductor told him to get off and pushed and shoved him off. The written statement was not signed or sworn to by the plaintiff, and the uncontradicted evidence is that he refused to sign and swear to it. The attorneys for plaintiff objected to the admission of said statement in evidence, because the same was not signed by the plaintiff, but was denied by him as being correct. The exceptions were overruled and the statement admitted in evidence. In this action the court erred. It is clear that, the plaintiff not having signed the same and having denied its correctness, it could not be introduced as his statement. While the witness Daniels was testifying about the statement, he read the same in the hearing of the jury to demonstrate the witness' manner of reading the same; but it was not introduced in evidence at that time. Subsequently, the defendant's counsel were permitted, over the objections of plaintiff, as above stated, to read in evidence portions of the statement. This was error. The defendant could introduce in evidence admissions made by plaintiff in the presence of others, but could not read in evidence a purported statement, as his statement not signed by him, and which he testified was not correct.

[3] It is assigned that the trial court erred in that portion of the second paragraph of the charge in which the jury were instructed that if they found that the conductor of the defendant pushed the plaintiff off of the train while it was in motion, and that such act of the conductor in pushing the plaintiff off of the train was negligence, and that the plaintiff was injured thereby, and that such negligence, if any, was the proximate cause of the plaintiff's injuries, to find for the plaintiff. The question of proximate cause was not an issue in the case, yet the court in this paragraph of the charge requires the jury to find that the act of the conductor in wrongfully pushing the plaintiff off of the train was negligence, and that such negligence was the proximate cause of the injuries. This paragraph of the charge is subject to criticism.

[4] The suit was based on the allegation that the appellee's conductor pushed the

plaintiff off of defendant's train while it was going at too great a rate of speed, thereby causing the plaintiff's injury. There was evidence that plaintiff got upon defendant's train at the defendant's depot, not as a passenger, but merely to see his brother upon business, his brother being a passenger on said train at said time; that the train pulled out without any notice to the plaintiff; and that, after the train was going at a dangerous rate of speed, the conductor of the defendant wrongfully pushed the plaintiff off of the train, causing him to receive the injuries sued for. If the conductor negligently pushed or shoved plaintiff off of the train while it was in motion, and he was thereby injured, the act of the conductor constituted negligence, for which plaintiff was entitled to recover. Railway Co. v. McCoy, 90 Tex. 264, 38 S. W. 36; Railway Co. v. Rowland, 90 Tex. 365, 38 S. W. 756.

[5] Error is assigned to the third paragraph of the court's charge, reading as follows: "On the other hand, if you believe from the evidence that the conductor in charge of the defendant's passenger train which left Cleburne on the night of the 20th of March, 1909, did not meet the plaintiff on the platform or steps of said coach, or, if he did meet the plaintiff, but did not shove or push or use any force to throw plaintiff off of the passenger train at said time, then, in either event, you will find for the defendant." This charge is subject to criticism, in that it required the jury to find an immaterial issue in the alternative before they could find in favor of the plaintiff. The wrong of the defendant was in pushing the plaintiff off of the train while it was going at a dangerous rate of speed, and whether the plaintiff met the conductor of the defendant on the platform, or on the steps, was altogether immaterial; yet the court in this charge required the jury to find as a material fact that the plaintiff met the conductor on the platform, or on the steps, and if they failed to find that the plaintiff met the conductor on the platform, or on the steps, in either event, to find for the defendant.

[6] Error is assigned that the trial court erred in having a conversation with the foreman of the jury about the case while the jury were considering of their verdict, and, further, that the court erred, in this, that after the jury had received the general charge of the court and retired to consider of their verdict, and after they had failed to agree in calling the jury back into the courtroom in the absence of the plaintiff or any of his attorneys, or any of the attorneys in the case, and giving them an oral instruction, without any request from the jury.

Upon the hearing of the motion for new trial, Judge Lockett testified: "The jury in the Quigley Case retired to consider of their verdict on Wednesday evening, the 16th day of November, between 4 and 5 o'clock in the evening, and on the next day at noon, at the noon hour, one of the jurors met me and told me that they were having some trouble, and that they would have to come into court, and along about somewhere between 2 and 3 o'clock, as near as I can fix the time, I had the sheriff bring the jury into court, and I asked them how they stood as to numbers, but not as to which party they were for, and, after the jury stated to me how they stood, I told the jury that I would not discharge them, but would keep them together, and that it was their duty, as long as I did keep them together, to consider of the case, that I wouldn't keep the jury together any longer than I thought was necessary under the evidence in the case, and that if they got tired of considering the case in the jury room, and wanted to go out and walk around, they could do so, but that, as long as they were kept together in the jury room, I wanted them to continue to try to reach a verdict in the case, and that that was their duty, and that it was expensive to the litigants to have to try this case, and also to the county, and that, if the jury could reach a verdict in accordance with justice and right in the case under the evidence and the law, it was their duty to do so; that they were supposed to be impartial and to have no interest in the result of the case, and that I didn't want the jury or any of them to get mad or stubborn and to refuse to continue to go over the case, but that, if they were divided on questions of fact, they could come in here, and the stenographer would read such parts of the testimony as they desired, and that if it was a question of law that I might be able to assist them on that, and for them to go back into the room, and if any time they got cross-ways, I said to them to quit and go out and rest a while and get something to sweeten them up, to sweeten up their disposition, and get something to get in a good humor, and possibly they could reach a verdict in the case." On cross-examination he stated: "I said, in substance, about this, that it was important for the jury to reach a verdict, if they could in accordance with the justice of the case. That's the way I always put 'it. Sometime I don't use those exact words. I did not state to the jury that it was of great importance. I didn't state the balance of that statement there. I didn't state it just like it is stated there, but I remember that I did state to the jury that they ought to continue to work on the case and reach a verdict if they could in accordance with the justice of the case. But that is the statement I usually make to the jury on Monday morning about that bull-headed and stiff-neckness. I usually make that statement to the jury on Monday. I don't think I ever made such a statement to a jury while they were trying a case. I am pretty sure I didn't in that case. I did state this, in substance, that the majority of the jury ought not to undertake to run it over the minority, that they ought to hear what the

minority had to say, and, likewise, the minority ought not to get stubborn and refuse to go over the case with the majority." W. B. Harrell, an attorney, testified to being in the courtroom when the jury were called in by the judge. His testimony conflicted with that of the trial judge. Judge Lockett says he instructed the jury that it was their duty to reach a verdict under the evidence and the law if they could do so. He further told them that "the majority of the jury ought not to undertake to run it over the minority, that they ought to hear what the minority had to say, and, likewise, the minority ought not to get stubborn and refuse to go over the case with the majority." We are of the opinion that this action on the part of the court, in the absence of counsel, and without any request by the jury for further instructions, was error. Texas Midland Railroad v. Byrd, 102 Tex. 263, 115 S. W. 1163, 20 L. R. A. (N. S.) 429; Railway Co. v. Byrd, 41 Tex. Civ. App. 164, 90 S. W. 185; McPeak v. Railway Co., 128 Mo. 617, 30 S. W. 170; Railway Co. v. Johnson, 99 Tex. 337, 90 S. W. 164.

In the case of Texas Midland Railroad v. Byrd, 102 Tex. 265, 115 S. W. 1163, 20 L. R. A. (N. S.) 429, first above cited, our Supreme Court, in an opinion by Chief Justice Gaines, after quoting the statutes prescribing the duties of the court when it wishes to communicate with the jury, says: "It is thus seen that the statutes very carefully provide the manner in which the court shall confer with the jury, and that he shall give no instructions or confer with them in any manner except in open court. The obvious purpose of this is that counsel may be present and see that the, conference is proper, and, if not, may take a bill of exception to the action of the court. It seems to us, therefore, that it is error for the judge to confer with the jury in any other manner than that prescribed by law, and that if he does his judgment on that account ought to be reversed. In numerous cases from other jurisdictions it is held that the private conversation of the judge and the jury is not only improper, but that it is misconduct for which the judgment will be reversed, without reference to the question whether such misconduct affected the verdict."

For the errors pointed out, the judgment is reversed, and the cause remanded.