UNITED STATES of America
v.
Saul A. KELLER.
Crim. No. 92–55.

United States District Court
D. New Jersey.
Oct. 26, 1956.

Raymond Del Tufo, Jr., U. S. Atty., Newark, N. J., by Pierre P. Garven, Asst. U. S. Atty., Ridgewood, N. J., for plaintiff.

Martin D. Moroney, Newark, N. J., for defendant.

MODARELLI, District Judge.

Defendant was indicted for aiding and abetting in the filing of a false Federal Housing Administration Certificate in violation of 18 U.S.C. § 1010.[1] The cause

---

1. "§ 1010. *Federal Housing Administration transactions*

"Whoever, for the purpose of obtaining any loan or advance of credit from any person, partnership, association, or corporation with the intent that such loan or advance of credit shall be offered to or accepted by the Federal Housing Administration for insurance, or for the purpose of obtaining any extension or renewal of any loan, advance of credit, or mortgage insured by such Administration, or the acceptance, release, or substitution of any security on such a loan, advance of credit, or for the purpose of influencing in any way the action of such Administration, makes, passes, utters, or publishes any statement, knowing the same to be false, or alters, forges, or counterfeits any instrument, paper, or document, or utters, publishes, or passes as true any instrument, paper, or document, knowing it to have been altered, forged, or counterfeited, or willfully overvalues any security, asset, or income, shall be fined not more than $5,000 or imprisoned not more than two years, or both. June 25, 1948, c. 645, 62 Stat. 751."

was tried with a jury and a verdict of guilty returned on May 24, 1956. The defendant moved timely for a judgment of acquittal, including in the alternative a motion for a new trial. Federal Rules of Criminal Procedure, Rules 29(b), 33, 18 U.S.C. Specifically, the defendant asserts the following grounds in behalf of his motion: (1) Insufficient evidence to warrant conviction; (2) the verdict was contrary to law in that because the certificate was forged the F.H.A. would not honor any claim or be influenced within the meaning of Title 18 U.S.C. § 1010; (3) an erroneous charge; (4) error in admitting Ginter's statement in evidence; and (5) the statement by a handwriting expert engaged by defendant would discredit Ginter's testimony and reveal the "inconclusive" nature of the testimony of the Government's handwriting expert.

Attention will be directed to the contentions asserted by defendant regarding the authenticity of the signatures of the home owners, Mr. and Mrs. William G. Harris, on the F.H.A. Completion Certificate.[2] It should be noted at the outset that for this element of defendant's motion reliance is placed upon an affidavit of J. Howard Haring, who claims expertise in the field of handwriting analysis. The analysis of signatures made pursuant to an examination granted by this court June 7, 1956, is reported in an affidavit signed by Mr. Haring. His opinions may be summarized as follows:

1. Mr. Haring was "unquestionably inclined to the opinion that the pen and ink used to sign the names 'William G. Harris' and 'Ruth E. Harris' * * * was the same pen and ink used to write all the other writings admittedly written by J. J. Ginter * * *."

2. Further, he was "unquestionably inclined to the opinion that the questioned signatures 'William G. Harris' and 'Ruth E. Harris' * * * were written by the same individual who wrote all the

writings admittedly inscribed * * * by J. J. Ginter * * *."

3. Lastly, he was "unquestionably inclined to the opinion that the questioned signatures, 'William G. Harris' and 'Ruth E. Harris' were not written by the defendant, Saul A. Keller."

Movant asserts that the impact of Mr. Haring's opinion just summarized, amounts to newly-discovered evidence. Movant cites two rules, that are announced in Larrison v. United States, 7 Cir., 1928, 24 F.2d 82, and in Berry v. State of Georgia, 1851, 10 Ga. 511. The rule in the Larrison case, supra, at pages 87 and 88 of 24 F.2d is that a new trial should be granted when,

"(a) The court is reasonably well satisfied that the testimony given by a material witness is false.

"(b) That without it the jury *might* have reached a different conclusion.

"(c) That the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial."

To be contrasted with the Larrison rule is the so-called Berry rule, to wit:

"(a) The evidence must be in fact, newly discovered, i.e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on, must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal." Johnson v. United States, 8 Cir., 1929, 32 F.2d 127, 130.

The distinction between and the applicability of the two rules was explained in United States v. Johnson, 7 Cir., 1944,

---

2. Defendant's counsel stipulated that the signatures of the home owners on the questioned documents were not genuine.

142 F.2d 588, 591. The Larrison rule is applicable where there has been a recantation or where it has been proved that false testimony was given at the trial. Gordon v. United States, 6 Cir., 1949, 178 F.2d 896; United States v. Hiss, D.C.S.D.N.Y.1952, 107 F.Supp. 128, affirmed, 2 Cir., 1953, 201 F.2d 372. Otherwise, the Berry rule is applicable. It should be emphasized that under the Larrison rule the court must be reasonably well satisfied that testimony at the trial was false, and that without it the jury might have reached a different conclusion. I am not so satisfied.

Turning now to the application of the Berry rule to the instant case, it is noteworthy that this rule is quite generally applied by the federal courts and is of almost universal application among the States. 23 C.J.S., Criminal Law, § 1461; 39 Am.Jur. § 165. The law of New Jersey seems to follow the Berry rule. State v. Bunk, 1950, 4 N.J. 482, 73 A.2d 245. The leading case in the Third Circuit on the question of newly discovered evidence is United States v. Rutkin, 1953, 208 F.2d 647.

 Was the evidence in fact newly discovered? The alleged evidence which defendant relies upon is the opinion of the handwriting expert, Mr. Haring. The entire issue of the authenticity of the signatures on the F.H.A. Completion Certificate was joined when Ginter denied forging the document. Defendant made no effort during the course of the trial to adduce independent evidence to controvert this denial, although every avenue was open to him to explore this issue during the trial. Ginter's testimony was taken on the first day of the trial, yet defendant made no request to adjourn in order to obtain the services of a handwriting expert.

Is the evidence relied on cumulative or impeaching? It will be recalled that defendant testified that Ginter had told him that he, Ginter, had forged the documents; Ginter said that he had not forged them. Any further evidence, such as the opinion of a handwriting expert

as to the signatures in question would most definitely be both cumulative and in the nature of an attempt to impeach. The conflict, under our system, is for the triers of fact to resolve.

While evidence of a handwriting expert would be material to the issue of credibility, is it such that on a new trial the newly discovered evidence would probably produce an acquittal? The most favorable import to be given to the affidavit of defendant's handwriting expert is that, in his opinion, it is probable that the writing on certain exhibits pointed to the hand of Ginter. Opposed to this conclusion was the testimony of Clarence Bohn, F.B.I. handwriting expert, who said he could not tell who forged the documents.

Aside from the conflict surrounding the signatures, defendant's credibility was vigorously challenged at all other points throughout the trial, most pointedly with the statements of Mr. Harris and with the F.B.I. Agent Johnson. Viewing the case in its totality, it is most speculative to conclude that the verdict would turn upon the evidence of defendant's handwriting expert.

 Defendant contends that the court erred in admitting prior statements of witness Ginter, more specifically, the statement made to an F.B.I. Agent, Raymond L. Johnson, in August, 1954. Defendant testified that Ginter admitted to him that he, Ginter, had forged the F.H.A. papers. At the conclusion of defendant's case, the Government offered Johnson who testified as to prior statements taken from Ginter. Defendant cites Ellicott v. Pearl, 10 Pet. 412, 9 L.Ed. 475, and Conrad v. Griffey, 11 How. 480, 1850, 52 U.S. 480, 13 L.Ed. 779, concerned with impeachment by inconsistent statements.

This contention by defendant requires a review of the area of the rules of evidence known as impeachment and support. More specifically, it touches upon the scope to be given to efforts in support of a witness. What kind of attack upon a witness opens the door to that form of

"bolstering" evidence known as prior statements by the witness consistent with his present story? [3]

McCormick on Evidence, (1954), Ch. 5, § 49, discusses this problem as follows:

"There is much division of opinion on the question whether impeachment by inconsistent statements opens the door to support by proving consistent statements. A few courts hold generally that it does. Cross v. State, 1912, 118 Md. 660, 86 A. 223; Piehler v. Kansas City Pub. Service Co., 1950, 360 Mo. 12, 226 S.W.2d 681; State v. Bethea, 1923, 186 N.C. 22, 118 S.E. 800 (allowable after any form of impeachment). Most courts, since the inconsistency remains despite all consistent statements, hold generally that it does not. Ellicott v. Pearl, 1836, 10 Pet. 412, 439 [9 L.Ed. 475]; Commonwealth v. Jenkins, 1858, 10 Gray, Mass., 485, 488. But certain exceptions should be recognized. * * * If in the particular situation, the attack by inconsistent statement is accompanied by, or interpretable as, a charge of a plan or contrivance to give false testimony, then proof of a prior consistent statement *before* the plan or contrivance was formed, tends strongly to disprove that the testimony was the result of contrivance. Here all courts agree." [4]

McCormick continues:

"It is for the judge to decide whether the impeachment amounts to a charge of contrivance,—ordinarily this is the most obvious implication—and it seems he is entitled to have an avowal one way or the other from counsel."

The application of the foregoing review to the record of the instant case raises several questions.

1. May the court interpret defendant's attack upon Ginter as a charge of a plan or contrivance to give false testimony? The cross-examination of Ginter by defense counsel reveals that defense counsel sought to show that Ginter's trial testimony was contrived after the witness was charged with a federal violation.[5] It will be noted that the attempt

---

3. It should be noted that when the *sole* purpose of introducing the prior statement is to support the credibility of the witness, it is not "substantive" evidence. Townsend v. United States, 3 Cir., 1939, 106 F.2d 273, syl. (dictum); 4 Wigmore, Ev. § 1132.

4. Affronti v. United States, 8 Cir., 1944, 145 F.2d 3 (rule recognized; discretionary); Coates v. People, 1940, 106 Colo. 483, 106 P.2d 354; People v. Singer, 1949, 300 N.Y. 120, 83 N.E.2d 710, noted 35 Cornell L.Q. 867. In the last case the court points out that though the common phrase is "recent" fabrication or contrivance, the "recent" is misleading. It is not required to be recent as regards the trial, but only that the contrivance be more recent than the consistent statement. See cases collected in 4 Wigmore, Ev., § 1129; Note, 140 A.L.R. 21, 93–128.

5. Cross-examination of Ginter by Mr. Moroney (Transcript, pp. 54–56):

"Q. Have you ever been convicted of a crime? A. No, sir; other than this particular matter.

"Q. When you pled guilty to this? A. That's right.

"Q. This charge of submitting a false statement to a Government agency. A. That's right.

"Q. Did you at first plead not guilty? A. Yes, sir.

"Q. And did you give a statement to the Government—A. I don't know what—

"Q. —against Mr. Keller? A. I don't understand your question.

"Q. Did you give any written statement to the Government? A. What else did you say?

"Q. Against—or, rather, in connection with this matter.

"The Court: Involving Mr. Keller.

A. I gave them a statement involving the facts as I knew them.

"Q. In line with your testimony? A. That's right.

"Q. And do you recall when you gave the statement? A. When?

"Q. Yes. A. I don't recall it.

"Q. Was it before your plea of guilty? A. Yes, it was before.

"Q. When were you sentenced? A. December 2, 1955.

to establish a fabrication was focused at a time subsequent to the August, 1954, visit of Ginter and Johnson. The ostensible inducement to fabricate his testimony would be for Ginter to get a mitigation of sentence. Yet, the record shows that Ginter gave his statements to Johnson several months prior to Ginter's indictment. From this sequence of events it may be concluded that the consistent statement testified to by Johnson pre-dates the alleged plan of Ginter to fabricate his story.

In short, when there is impeachment based upon motive to fabricate, it is competent to put in evidence statements made by the witness, consistent with what he stated on the witness stand, which statements were made *before* the alleged motive or bias arose. Di Carlo v. United States, 2 Cir., 1925, 6 F.2d 364, 368.

Defendant is in error in asserting that because Johnson's conversation with Ginter took place in August, 1954, which was after Ginter's conversation with defendant in May, 1954, his (Johnson's) testimony should be excluded. The point of time upon which the question turns is before or after an alleged plan or contrivance was formed.

Defendant cites Mellon v. United States, 5 Cir., 1948, 170 F.2d 583, for the proposition that a party may not bolster his witness by proof that the witness has previously told the same story that he told on the stand. Defendant omits a significant element from his presentation of that case, to wit, a party may not bolster his witness by proof *in the case in chief*. The trial court in the Mellon case, supra, allowed the Government to put on the stand a corroborating witness even though there had been no attack upon the credibility of the prior witness for the prosecution. This practice violated the elementary principle that in the absence of an attack upon credibility no sustaining evidence is allowed. McCormick on Evidence, Ch. 5, § 49. The obvious purpose of this practice is to avoid a defense of a witness before the need for one appears. In the case at bar, Johnson was called after defendant had sought to imply contrivance on the part of Ginter.

Defendant next cites Di Carlo v. United States, supra, for the proposition that prior consistent statements to be allowed at all, must have been "freshly made" after the offense. Defendant concludes that, in the case at bar, since five months elapsed from the time of the forgery to time Ginter gave Johnson a statement, too long a time elapsed to make the statement admissible. Defendant is again in error in the application he seeks to make of the Di Carlo case. The occasion the courts have to calculate a time sequence [i. e., whether or not a prior consistent statement was "freshly" made] is when the court construes an impeachment to amount to an imputation of inaccurate memory or motive to fabricate. 10 A.L.R. 21, 117–120. Where the judge construes a line of questioning to be directed towards impugning the memory of a witness, then he will allow a consistent statement made when the event was recent and memory fresh to be received in support. But in the case at bar, the impeachment of Ginter was not directed to his memory but to impeachment interpretable as a charge of contrivance. The only time sequence pertinent here, as noted in foregoing paragraphs, is whether the prior consistent statement was made before the plan or

"Q. And do you recall when you pled not guilty? A. The date, no.

"Q. Did some time else between your plea of not guilty—or guilty and sentence? A. Some time elapsed.

"Q. How much? A. Exactly, I don't remember.

"Q. A month? A. A few months.

"Q. What was your sentence? A. I was fined $250.

"Q. You were fined $250? A. Yes, sir.

"Q. You were not placed on probation? A. No, sir.

"Q. And no jail term, of course? A. No, sir.

"Q. Just a fine of $250? A. That's right, sir. It is all a matter of public record, Mr. Moroney, to my sorrow."

698

contrivance to give false testimony arose. Judge Learned Hand pointed out in the Di Carlo case, 6 F.2d at page 366, that "It is well settled that, when the veracity of a witness is subject to challenge because of motive to fabricate, it is competent to put in evidence statements made by him consistent with what he says on the stand, made before the motive arose."

By citing Ryan v. United Parcel Service, Inc., 2 Cir., 1953, 205 F.2d 362, defendant in effect admits that the admissibility turns upon whether or not a motive existed at the time the prior consistent statements were made to fabricate a story. Again in Dowdy v. United States, 4 Cir., 1931, 46 F.2d 417, 425 the reason assigned for inadmissibility was that "it is obvious that a motive to testify falsely existed then fully as much as it did at the time of the trial." Even so, the court allowed the declarations of the witness made prior to his arrest and admitted solely for the purpose of corroborating his trial testimony.

Defendant asserts that the court failed to make clear in his charge to the jury that Johnson's testimony was not to be considered as substantive evidence but merely related to Ginter's credibility. An examination of the charge makes it clear that Ginter's credibility alone was emphasized. (Transcript of Charge, p. 16.) Referring to the testimony of the two F.B.I. men the court said: "And as to them, you will apply the same standards of credibility as you do to any other witnesses * * *." (Transcript of Charge, p. 19.) Moreover, Rule 30 of the Federal Rules of Criminal Procedure states, in part:

"* * * No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

Defendant did not comply with this rule.

Lastly, defendant asserts that the court committed numerous errors in its charge, prejudicial to the defendant. Specifically, defendant alleges the court erred in its charge on character evidence in that it did not charge that character evidence alone was enough to engender a reasonable doubt. The Third Circuit view on this matter has been set forth repeatedly. United States v. Johnson, 3 Cir., 1947, 165 F.2d 42, certiorari denied, 1948, 332 U.S. 852, 68 S.Ct. 355, 92 L.Ed. 421, jury need not acquit defendant merely because he possessed a good reputation before indictment; United States v. Augustine, 3 Cir., 1951, 189 F.2d 587; United States v. Claypoole, 3 Cir., 1955, 227 F.2d 752. All of these decisions hold that the trial court is not obliged to charge that character evidence alone is enough to create a reasonable doubt.

Defendant further asserts that, relative to the charge on the matter of reasonable doubt, the court misquoted the approved definition. The court charged:

"So that there be no trouble about it, now I shall give you the approved definition. 'A reasonable doubt is not a mere possible doubt but it is that state of mind which after a full comparison and consideration of all the evidence leaves the mind of the jurors in that condition that they can say they feel an abiding conviction to a moral certainty of the truth of the charge.'" (Transcript of Charge, p. 13.)

The court omitted to include the word "not" after the word "can." That part of the charge should have read: "* * * in that condition that they cannot say they feel an abiding conviction to a moral certainty of the truth of the charge." However, it is elementary that a court's charge must be taken as a whole. Repeatedly, the court emphasized the fact that the proof must reach a level beyond a reasonable doubt. A content analysis of the charge reveals that the term reasonable doubt appears on page 9, 10, 12, 13, 14, 17, 18, and 20. On some pages,

the term appears with the usual admonition more than once.

Defendant next asserts that the court's charge as to the elements to be considered by the jury was insufficient. Defendant asserts that the court asked the jury to consider but two of the necessary elements of the crime. An examination of the charge reveals that intent was charged (pages 14, 15); causing a false completion certificate to be passed was charged (pages 4, 14, 15); wilfully, unlawfully, and feloniously (pages 14, 15); with knowledge (pages 5, 15); and that defendant intended that such be offered and accepted by the F.H.A. (pages 6, 7, 14, 15).

Defendant, for the first time, complains that the court erred inadvertently by "assuming the role of the United States Attorney." More specifically, defendant says that the court propounded leading and suggestive questions which would not have been allowed by the court if they had been asked by counsel. The record reveals that the isolated questions directed to the witnesses were wholly within the power of the court in its effort to elicit the truth. In Glasser v. United States, 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680, the Supreme Court held that a district judge conducting a jury trial in a criminal case has a sound discretion to interrogate witnesses. It is submitted that the conduct of the court was entirely compatible with the canons of judicial impartiality.

I am of the opinion, after a full consideration of what the defendant has offered, that under either rule he is not entitled to a new trial. The defendant has submitted no proof which would support a finding by a jury that the testimony received in evidence at the trial was false. There is no newly discovered evidence which would justify the conclusion that if the statements of defendant's handwriting expert were submitted to a jury a verdict of acquittal would result.

There was adequate evidence to warrant the jury's verdict, returned in about forty minutes after a three-day trial.

The motion is denied.

An order may be submitted in conformity with the opinion herein expressed.