IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

APRIL SESSION, 1997

FILED

September 18, 1997

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE | ) | C.C.A. NO. 01C01-9605-CR-00213 |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | DAVIDSON COUNTY |
| VS. | ) | |
| | ) | HON. SETH NORMAN |
| MICHAEL TYRONE | ) | JUDGE |
| GORDON, | ) | |
| | ) | |
| Appellant. | ) | (First Degree Murder; Especially |
| | ) | Aggravated Robbery) |

ON APPEAL FROM THE JUDGMENT OF THE
CRIMINAL COURT OF DAVIDSON COUNTY

FOR THE APPELLANT:

MARK J. FISHBURN
100 Thompson Lane
Nashville, TN 37211

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

PETER M. COGHLAN
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

VICTOR S. JOHNSON
District Attorney General

KYMBERLY HAAS
Assistant District Attorney General
Washington Square, Suite 500
222 Second Avenue North
Nashville, TN 37201-1649

OPINION FILED _____

REVERSED AND REMANDED

DAVID H. WELLES, JUDGE

# OPINION

This is an appeal as of right pursuant to Rule 3, Tennessee Rules of Appellate Procedure. The Defendant, Michael Tyrone Gordon, was convicted of first-degree felony murder and especially aggravated robbery. He was sentenced to life imprisonment for the felony murder count and seventeen years for the robbery to be served consecutively to the life sentence. The Defendant appeals his convictions and sentences and raises the following issues for review: (1) That the trial court erred in denying his request to instruct the jury on criminal responsibility for facilitation of a felony; (2) that the trial court erred by admitting a witness' prior consistent statement; (3) that the trial court erred in its charge of criminal responsibility for the conduct of another; (4) that the evidence was insufficient to convict the Defendant on both counts; and (5) that the trial court erred in imposing consecutive sentences. We conclude that we must reverse and remand for a new trial.

At approximately 11:00 p.m. on June 11, 1993, an off-duty police officer discovered a man lying on the ground on the entrance ramp to northbound Interstate 65 at Trinity Lane in Nashville, Tennessee. Other officers and paramedics were called to the scene. The victim had a weak pulse and a small amount of blood was near his mouth. Three entrance wounds from a small caliber weapon were found in the man's back. Officers found his wallet, which contained his driver's license identifying him as Maurice Jordan, and a pager. The victim later died from his wounds.

A few minutes after the victim was discovered, another police officer was patrolling the Litton Park Apartments and observed the Defendant sitting in his car for a period of time. The officer stopped his cruiser near the Defendant's vehicle, got out and approached him. The Defendant also left his vehicle and approached the officer. The officer looked beyond the Defendant and saw what appeared to be a bag of white powder lying on the floorboard of the Defendant's car. The officer attempted to arrest the Defendant, but he fought the officer. A crowd gathered. The Defendant extricated himself and ran off, but the officer remained with his cruiser because the vehicle was unsecured. The officer initiated a search of the car and discovered that the bag was gone. He recovered a loaded .25 caliber pistol, a loaded .38 caliber pistol, a set of digital scales, and a plastic bag which appeared to contain crack cocaine, all found in a pillowcase on the back seat. It was later determined that the contents of the bag were not cocaine. An investigation revealed that the car was owned by the Defendant's mother and that the Defendant was the individual the officer had seen in the car at the Litton Park Apartments.

The investigation of Maurice Jordan's murder revealed that his vehicle, which was a gray Blazer, and a cellular phone were missing. Phone records showed hundreds of calls made after the victim was killed. Many of those calls were made to Michael Steel. Steel and his girlfriend lived at the Litton Park Apartments. Steel was initially suspected in the murder and was interviewed by the investigating officer, Detective Bill Pridemore.

Steel testified at trial regarding the events on the night of the murder. Steel stated that on June 11, 1993, he was awakened by a phone call from the

co-defendant, Edward Thompson.[1]  Thompson arrived at Steel's apartment shortly thereafter.  Steel asked why the co-defendants arrived so quickly and Thompson stated that he had a cellular phone.  He showed the phone to Steel and made a call to prove that the phone worked.  Both Thompson and the Defendant had bags of cocaine in their possession.  The cocaine was in powder form broken into several separate bags.  The Defendant left the apartment with approximately two of the bags of cocaine and returned a short time later.  He rushed in the door and excitedly stated that a police officer had stopped him and that he left his weapons and cocaine in the car.  The co-defendants then argued because the Defendant wanted part of Thompson's cocaine because he believed the police took his.

Steel reported that he saw the co-defendants the next day at his apartment.  Thompson explained that the two obtained the cellular phone and the cocaine after they "set up and robbed a guy on Trinity Lane."  He said the victim's name was Maurice.  Steel saw Thompson several days later and observed that he was driving a gray Blazer.  Thompson told him that he bought the vehicle and also that he had sold the phone.  The Blazer was later found, abandoned in North Nashville parked on a residential street.  There is no evidence in the record that the Defendant used the Blazer or the phone.

Detective Pridemore told Steel that he needed to speak with Thompson and the Defendant Gordon.  He spoke with Thompson regarding the murder.

---

[1]The co-defendant, Edward M.Thompson, was convicted in a separate trial of first-degree murder and especially aggravated robbery, for which he received concurrent sentences of life and eighteen years.  This court affirmed his convictions and sentences.  State v. Edward M. Thompson, C.C.A. No. 01C01-9505-CR-00155, Davidson County (Tenn. Crim. App., Nashville, July 30, 1997).

Later that day, on July 20, 1993, the Defendant paged Pridemore and stated he had heard that Thompson turned himself in. He stated that he wanted to turn himself in because he was there when the murder took place, but that he wanted to wait until Saturday so he would have money to make bond. The Defendant did not report and a criminal warrant for his arrest was issued. The Defendant was arrested on October 17, 1993. The Defendant gave a videotaped statement. In the Defendant's version of the facts, he claims that he and Thompson contacted Maurice Jordan to buy cocaine. The two co-defendants arranged to meet the victim at the McDonald's restaurant in East Nashville. They met the victim and got in his gray Blazer. The Defendant provided the .25 and .38 caliber pistols, and possibly a .35 caliber pistol. He asserts that the guns were used just for protection when making the drug buy. The Defendant made his purchase of the cocaine. Then, when it was Thompson's turn, he first stated he had to get some money. The victim and the two co-defendants drove down Trinity Lane and they turned on a side street. The victim had been driving, with the Defendant in the front passenger seat and Thompson in the rear. At that point, Thompson pulled a weapon on the victim. The Defendant and the victim changed seats and the Defendant drove towards Interstate 65. As they approached the on-ramp, the victim attempted to jump out of the vehicle and Thompson shot him in the back with the .25. Thompson kept the Blazer and used the cellular phone, which the Defendant thought was a stupid idea. They shared the cocaine. The Defendant maintains, however, that he did not know that Thompson intended to rob the victim until Thompson pulled the gun.

Sean Jackson, a friend of the victim Maurice Jordan, testified at trial that the victim was house-sitting for him when the victim was killed. Jackson gave the

victim his pager to handle drug deals while he was gone on vacation. Jackson left a supply of cocaine in powder form at his house that was available for sale. The victim's mother testified that she and his father owned a Blazer that they allowed him to use. She was not aware that he had a cellular phone until after his death. She received his personal effects, including his wallet, which contained only credit cards and no cash. She said it was unusual for him to have no cash. She also reported that her son had served time for selling drugs.

The Defendant was convicted by a Davidson County jury of felony murder and especially aggravated robbery. The jury was instructed concerning criminal responsibility for the conduct of another and accessory after the fact. The trial court imposed the mandated life sentence for felony murder and in a separate sentencing hearing, set a sentence of seventeen years for the robbery conviction. He ordered the sentences to run consecutively after considering the Defendant was on escape status when the crimes were committed. The Defendant now appeals both his convictions and the sentence for especially aggravated robbery.

I.

As the Defendant's first issue, he argues that the trial court erred in failing to instruct the jury on criminal responsibility for the facilitation of a felony. The Defendant submitted a request for special jury instructions, including a charge of criminal responsibility for facilitation of a felony. Tenn. Code Ann. § 39-11-403. However, after consideration, the trial court agreed only to charge criminal

responsibility for conduct of another and accessory after the fact. Tenn. Code Ann. §§ 39-11-402; 39-11-411.

The trial court reasoned that neither the State's nor the Defendant's theories of the case presented facts that gave rise to the inference that the Defendant had facilitated the crimes. The State presented evidence that the Defendant planned to commit the robbery and with that intent, assisted the co-defendant Thompson in perpetrating the robbery and the killing. The Defendant maintained that he knew nothing of the robbery until it began and only assisted the co-defendant after the robbery had commenced.

Criminal responsibility for the conduct of another requires that "acting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." Tenn. Code Ann. § 39-11-402(2). Accessory after the fact states that:

> A person is an accessory after the fact who, after the commission of a felony, with knowledge or reasonable ground to believe that the offender has committed the felony, and with the intent to hinder the arrest, trial, conviction or punishment of the offender:
>
> > (1) Harbors or conceals the offender;
> >
> > (2) Provides or aids in providing the offender with any means of avoiding arrest, trial, conviction or punishment; or
> >
> > (3) Warns the offender of impending apprehension or discovery.

Tenn. Code Ann. § 39-11-411. Criminal responsibility for facilitation of a felony occurs when, "knowing that another intends to commit a specific felony, but

without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39-11-403(a).

The Defendant argues that the trial court should have charged facilitation as a lesser included offense. Tennessee Code Annotated section 40-18-110(a) requires trial judges to charge the jury on lesser included offenses charged in the indictment whether requested to do so or not. See Howard v. State, 578 S.W.2d 83, 85 (Tenn. 1979). Failure to instruct on a lesser included offense denies a defendant his constitutional right to trial by jury. State v. Wright, 618 S.W.2d 310, 315 (Tenn. Crim. App. 1981).

We are mindful of the cases which hold that a trial court does not commit reversible error in failing to instruct the jury on lesser included offenses when the record clearly shows that the defendant is guilty of the greater offense and is devoid of any evidence permitting an inference of guilt of the lesser offense. Whitwell v. State, 520 S.W.2d 338 (Tenn. 1975); see State v. Boyd, 797 S.W.2d 589 (Tenn. 1990), cert. denied, 498 U.S. 1074, 111 S.Ct. 800, 112 L.Ed.2d 861 (1991); State v. Mellons, 557 S.W.2d 497 (Tenn. 1977); Carmon v. State, 512 S.W.2d 595 (Tenn. Crim. App. 1974). However, when there is any evidence upon which reasonable minds could convict the defendant of a particular lesser included offense, the trial court commits reversible error if it fails to instruct regarding that offense. State v. Trusty, 919 S.W.2d 305, 311 (Tenn. 1996); Johnson v. State, 531 S.W.2d 558, 559 (Tenn. 1975); see State v. Atkins, 681 S.W.2d 571, 577 (Tenn. Crim. App. 1984), cert. denied, 470 U.S. 1028, 105 S.Ct. 1395, 84 L.Ed.2d 784 (1985).

Furthermore, we have held that when a defendant is charged with a felony by way of criminal responsibility for the conduct of another, facilitation of the felony virtually always is a lesser included offense. State v. Lewis, 919 S.W.2d 62, 67 (Tenn. Crim. App. 1995). As a result, a defendant can be guilty of facilitation of felony murder by way of facilitation of the underlying felony. Id.; cf. State v. Jubal Carson, No. 03S01-9606-CR-00063, Knox County (Tenn., Knoxville, Aug. 4, 1997). The facilitator's less culpable mental state is considered by reducing the offense to one lower class. Tenn. Code Ann. §§ 39-11-403(b). However, there are exceptions when the facts and circumstances surrounding the felony do not support a lesser included offense. See State v. Utley, 928 S.W.2d 448, 453 (Tenn. Crim. App. 1995); State v. Robert D. Davenport, C.C.A. No. 02C01-9505-CR-00143, Shelby County (Tenn. Crim. App., Jackson, Jan. 31, 1996). In Utley, the State's proof suggested only that the defendant had planned to rob a restaurant with his co-defendants. Utley, 928 S.W.2d at 453. In Davenport, the Defendant denied any participation in the felony and the State's proof suggested only that he had the requisite intent to participate in a robbery. Davenport, C.C.A. No. 02C01-9505-CR-00143, slip op. at 7.

The case at bar differs significantly from Utley and Davenport because the Defendant's version of the facts confirms that he had some involvement in the robbery. The facts as presented give rise to the possibility of several levels of involvement by the Defendant. Therefore, the jury could possibly convict the Defendant of the lesser included offense of facilitation of the felony. See State v. Mike Boot Parker, C.C.A. No. 03C01-9409-CR-00338, Knox County (Tenn. Crim. App, Knoxville, March 18, 1996). The trial court refused the instruction for facilitation because neither the State nor the Defendant submitted it as a specific

theory. However, it is the province of the jury to evaluate the proof and determine which set of facts or combination of facts they believe occurred beyond a reasonable doubt. It is the jury "whose peculiar duty it is to ascertain the grade of the offense. However clear it may be, the Court should never decide the facts, but must leave them unembarrassed to the jury." State v. Boyce, 920 S.W.2d 224, 227 (Tenn. Crim. App. 1995)(quoting Poole v. State, 61 Tenn. 288, 294 (1872)); see State v. Summerall, 926 S.W.2d 272, 279 (Tenn. Crim. App. 1995). The proof in the record supports a conclusion that the Defendant could have known that his cohort intended to rob the victim and that he provided a gun, but that he did not aid Thompson with the intent to benefit or share in the proceeds. Therefore, we believe the trial court's failure to instruct on facilitation of a felony constitutes reversible error.

II.

The Defendant presents as his second issue that the trial court erred in allowing the admission of a witness' prior consistent statement. One of the State's witnesses, Michael Steel, testified regarding the Defendant and Thompson's behavior immediately after the murder. This included testimony about the cellular phone, the Blazer, and the cocaine. Also, Steel testified at the trial that the co-defendant Thompson stated the next day after the murder that he and the Defendant "set up and robbed a guy on Trinity Lane." On cross-examination, defense counsel attempted to impeach the witness' credibility by pointing out that he did not mention Thompson's statement made the day after the murder when he testified at Thompson's trial. On redirect, the State elicited testimony from Steel that he had indeed made a statement about the day after

the murder to Detective Pridemore in a prior interview.  The State attempted to admit Pridemore's notes at that time, but the trial court denied the admission until Pridemore testified.  Pridemore later testified and read the contents of his notes verbatim.  The notes were not admitted as substantive evidence.

The Defendant argues first that the admission of the prior consistent statement was error and second, that the trial court erred by not issuing a limiting instruction to the effect that Pridemore's notes were only admissible as relevant to the witness' credibility.  Ordinarily, prior consistent statements of a witness are not admissible to bolster the witness' credibility.  State v. Meeks, 867 S.W.2d 361, 374 (Tenn. Crim. App. 1993).  State v. Braggs, 604 S.W.2d 883, 885 (Tenn.Crim.App.1980).  There are exceptions, though, which relate to particular attacks upon credibility.  For instance,  impeachment by use of a prior inconsistent statement will allow for introduction of a consistent statement made before the inconsistent one.  Graham v. McReynolds, 90 Tenn. 673, 18 S.W. 272, 277-78 (1891).  Likewise, if the witness is impeached by suggestion of faulty recollection, it would be relevant to prove that the witness made a consistent statement soon after the event when the matter was fresher in the witness' memory.  See  United States v. Coleman, 631 F.2d 908, 914 (D.C.Cir.1980); United States v. Keller, 145 F.Supp. 692, 697 (D.N.J.1956).   Here, defense counsel cross-examined Steel, suggesting that his trial testimony was fabricated. We find no error in the admission of Steel's prior consistent statement made shortly after the murder.

We do find that the trial court erred by failing to issue a limiting instruction regarding the purpose of Pridemore's testimony concerning the notes from the

Steel interview. See Braggs, 604 S.W.2d at 885. Prior consistent statements constitute hearsay evidence if offered for the truth therein. Id. The statement was read by the witness and not sought to be admitted as substantive evidence, nor did defense counsel request a special instruction at that time. Yet, the testimony the State sought to bolster was probative of the level of intent on the part of the Defendant. We cannot conclude that the error, standing alone, requires a reversal. But considering that this case is being reversed on another issue, the trial court, upon remand, should offer a limiting instruction in a new trial.

III.

In his third issue, the Defendant argues that the trial court erred in instructing the jury on criminal responsibility for the conduct of another in that he had a duty imposed by law to prevent the commission of the offense. Criminal responsibility for the conduct of another, Tennessee Code Annotated section 39-11-402, was charged in this case based on the State's theory that, although the Defendant did not perform the killing, he intended to participate in the robbery. Thus, the State argued he was criminally responsible for felony murder. The relevant statutory section with which the trial court instructed the jury reads:

> A person is criminally responsible for an offense committed by the conduct of another if:
>
> . . .
>
> (2) Acting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense; or

(3) Having a duty imposed by law or voluntarily undertaken to prevent commission of the offense and acting with intent to benefit in the proceeds or results of the offense, or to promote or assist its commission, the person fails to make a reasonable effort to prevent commission of the offense.

Over defense counsel's objection, the trial court instructed the jury on subsection three, that the Defendant had a duty imposed by law. The Defendant challenges the instruction as being erroneous and prejudicial. We first note that the Defendant has cited no authority for his contentions. Because the defendant has failed to cite authority to support his argument, this issue is waived. Tenn. Ct. Crim. App. R. 10(b); State v. Killebrew, 760 S.W.2d 228, 231 (Tenn. Crim. App. 1988).

However, we agree with the Defendant that the charge regarding a duty imposed by law is not implicated by the proof at trial. We do not believe the legislature intended to require every citizen to exercise an affirmative duty "imposed by law" to prevent the commission of a crime. Rather, this section refers to members of law enforcement agencies and others (such as care givers or custodial parents) vested with a specific duty to prevent a crime from occurring. Also, this section refers to those who have "voluntarily undertaken to prevent commission of the offense." Tenn. Code Ann. § 39-11-402(3). Neither of these situations apply to the Defendant in this case. Therefore, we conclude that the instruction was made in error. We believe this error was clearly harmless. In a new trial, the appropriate charge for criminal responsibility should include only subsection (2).

IV.

As the Defendant's fourth issue, he asserts that the evidence was insufficient to support a verdict of guilt for felony murder and especially aggravated robbery. When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Nor may this court reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

A jury verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. Cabbage, 571 S.W.2d at 835. Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Grace, 493 S.W.2d at 476.

The Defendant argues that, although he was present during the robbery and murder, there is insufficient evidence to show that he possessed the requisite

mens rea of intent to engage in the robbery. Thus, neither the robbery conviction nor the felony murder conviction can be maintained because there must be intent to commit or knowledge of the underlying felony. See Tenn. Code Ann. §§ 39-13-202(2); 39-13-401. The Defendant's version of the facts presents his statements that he intended simply to buy cocaine and had no knowledge of the robbery until it occurred. He contends that the only evidence presented by the State that he was involved in the robbery is circumstantial.

It is a well-established rule of law that a criminal offense may be established exclusively by circumstantial evidence. Marable v. State, 203 Tenn. 440, 451-54, 313 S.W.2d 451, 456-57 (1958); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990); State v. McAfee, 737 S.W.2d 304, 306 (Tenn. Crim. App. 1987); State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987); State v. Hailey, 658 S.W.2d 547, 552 (Tenn. Crim. App. 1983). However, before an accused can be convicted of a criminal offense based exclusively upon circumstantial evidence, the evidence "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant." State v. Crawford, 225 Tenn. 478, 482, 470 S.W.2d 610, 612 (1971). In other words, "[a] web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt." Crawford, 225 Tenn. at 484, 470 S.W.2d at 613; Cooper, 736 S.W.2d at 129.

Here, the Defendant admitted to being present during the robbery and killing. He also provided the weapons for himself and his co-defendant which

were used in the perpetration of the robbery and the murder of the victim. The Defendant switched seats in the car with the victim and drove while his co-defendant robbed and eventually killed him. There is evidence that the Defendant shared in the proceeds of the robbery by taking two bags of cocaine. There is also evidence that after he lost his share, he argued with the co-defendant that he wanted some more cocaine. Finally, there is evidence that the co-defendant stated that they had "set up and robbed a guy" to which the Defendant made no objection.

The determination of the Defendant's level of guilt became a factual issue properly resolved by the jury. Obviously, the jury rejected the Defendant's version of the events in its decision to convict him for felony murder. There was ample evidence to convict the Defendant of the offense. We decline to reevaluate the factual determinations made by the jury. This issue is without merit.

V.

In his final issue, the Defendant contends that the trial court erred in imposing consecutive sentences for felony murder and especially aggravated robbery. When an accused challenges the length, range, or the manner of service of a sentence, this court has a duty to conduct a <u>de novo</u> review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." <u>State v. Ashby</u>, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a de novo review of a sentence, this court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the defendant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; see State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principals set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

At the separate sentencing hearing for the robbery conviction, the State contended that the Defendant was on escape status when the crimes in question were committed. The Defendant stated that the escape warrant was issued when he was a juvenile and was dismissed when he turned eighteen in March, 1993. A General Sessions warrant was issued in August. The Defendant argues that his escape status terminated when he was discharged from the custody of the Department of Youth Development and that jurisdiction was not conferred upon the General Sessions Court at that time. It appears that the trial court

determined that the Defendant was on escape status and imposed consecutive sentences "by operation of law."

The Defendant correctly notes Rule 32(c)(3) of the Tennessee Rules of Criminal Procedure requiring mandatory consecutive sentences when a defendant is on escape from previously imposed convictions. The relevant portion reads:

> Mandatory Consecutive Sentences. Where a defendant is convicted of multiple offenses from one trial or where the defendant has additional sentences not yet fully served as the result of the convictions in the same or other court and the law requires consecutive sentences, the sentence shall be consecutive whether the judgment explicitly so orders or not. This rule shall apply:
>
> . . .
>
> (B) to a sentence for escape or for a felony committed while on escape;

Tenn. R. Crim. P. 32(c)(3)(B). He also correctly notes that prior decisions from this Court have interpreted Rule 32(c)(3) as requiring mandatory consecutive sentences between prior sentences not fully served and the newly imposed sentences. See State v. Curtis, 743 S.W.2d 195, 198 (Tenn. Crim. App. 1987)(questioned on other grounds in State v. Russell, 800 S.W.2d 169, 171 (Tenn. 1990)); see also State v. Andrew Spencley, C.C.A. No. 03C01-9307-CR-00220, Greene County (Tenn. Crim. App, Knoxville, Mar. 14, 1994). However, as between new multiple sentences, consecutive sentencing is not mandatory and concurrent sentences are warranted unless the trial court explains its reasoning on the record pursuant to Tennessee Code Annotated section 40-35-115. See Curtis, 743 S.W.2d at 198.

Regardless of whether the Defendant was on escape status or not, the State argues that consecutive sentencing was warranted under Tennessee Code Annotated section 40-35-115(1). The State suggests that the Defendant is a dangerous offender and proffers evidence to support this contention. Yet, because the sentencing here for the multiple offenses is discretionary, the trial court is required to place on the record its reasoning to support consecutive sentencing. Therefore, upon remand, in a new sentencing hearing the trial court may then consider consecutive sentencing in its discretion, and the reasoning for its decision should be placed upon the record.

Accordingly, we must reverse and remand for a new trial consistent with this opinion.

               _____
               DAVID H. WELLES, JUDGE

CONCUR:

_____
GARY R. WADE, JUDGE

_____
CURWOOD WITT, JUDGE